242 F.3d 78 (2nd Cir. 2001)
 WILLIAM G. FLANIGAN, I/ & on behalf of all others similarly situated; ROGER L. PAPE, I/ & on behalf of all others similarly situated; DAVID J. OSTERHOUT, I/ & on behalf of all others similarly situated; MARVIN F. SEDLACEK, I/ & on behalf of all others similarly situated; ALAN R. SAYDAH, I/ & on behalf of all others similarly situated; JOSEPH E. LEONE, I/ & on behalf of all others similarly situated; STEPHEN LOUGHLIN, I/ & on behalf of all others similarly situated; DONALD R. BLOYER, I/ & on behalf of all others similarly situated; JOSEPH G. MCGUIRE, I/ & on behalf of all others similarly situated; MELVIN L. GILBERT, I/ & on behalf of all others similarly situated; BARBARA A. TOBLER, I/ & on behalf of all others similarly situated; JOSEPH M. BELMONT, I/ & on behalf of all others similarly situated; RICHARD R. DUCKO, I/ & on behalf of all others similarly situated; ANNA M. MARCO, I/ & on behalf of all others similarly situated; VERNON W. WAGNER, I/ & on behalf of all others similarly situated; CAROL A. MOODY, I/ & on behalf of all others similarly situated; MARK H. TRZYZEWSKI, I/ & on
behalf of all others similarly situated; STEPHEN J. SMITH, I/ & on behalf of all others similarly situated; DAVID P. CRANSTON, I/ & on behalf of all others similarly situated, Plaintiffs-Appellants,
v.
GENERAL ELECTRIC CO.; DALE F. FREY; MICHAEL J. COSGROVE; JOHN H. MYERS; JOEL R. WILSON; ARTHUR S. BAHR; ALAN M. LEWIS; EUGENE K. BOLTON; DONALD W. TOREY; MARTIN MARIETTA CORPORATION; JOHN H. KNIES; LOCKHEED MARTIN CORP., Defendants-Appellees,
LAUREEN WARRICK; KENNETH BRILLINGER; FREDERICK A. HOLMES; CHRISTINE GRUDZIEN; FRED M. SLOAN, Movants.
 Docket Nos. 00-7569(L), 00-7570(CON)
August Term, 2000
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: December 4, 2000
Decided: March 02, 2001
 
 Plaintiffs appeal from an order of the United States District Court for the District of Connecticut (Arterton, J.), granting defendants' motions to dismiss the complaint.
 
 
 1
 AFFIRMED. [Copyrighted Material Omitted]
 
 
 2
 ALAN M. SANDALS, Sandals, Langer & Taylor, LLP, Philadelphia, PA (Kay E. Sickles, of counsel, Joseph C. Kohn, Kohn, Swift & Graf, P.C., Philadelphia, PA, of counsel, J. Daniel Sagarin and Elias A. Alexiades, Hurwitz & Sagarin, P.C., Milford, CT, of counsel, David S. Preminger, Rosen, Preminger & Bloom, New York, N.Y., of counsel, Jules L. Smith, Blitman & King, Rochester, N.Y., of counsel, J. Dennis Faucher, Miller, Faucher Cafferty & Wexler, Philadelphia, PA, of counsel, Francis J. Robinson, Newtown Square, PA, of counsel, Ronald H. Surkin, Richard, Di Santi, Hamilton & Gallagher, P.C., Media, PA, of counsel), for Plaintiffs-Appellants.
 
 
 3
 PATRICK W. SHEA, Paul, Hastings, Janofsky & Walker LLP, Stamford, CT (Jennifer M. Bologna, Dale F. Frey, Michael J. Cosgrove, John H. Meyers, Joel R. Wilson, Arthur S. Bahr, Alan M. Lewis, Eugene K. Bolton, and Donald W. Torey, of counsel), for Defendants-Appellees General Electric Co., Dale F. Frey, Michael J. Cosgrove, John H. Myers, Joel R. Wilson, Arthur S. Bahr, Alan M. Lewis, Eugene K. Bolton and Donald W. Torey.
 
 
 4
 PAUL J. ONDRASIK, JR., Steptoe & Johnson LLP, Washington, D.C. (Morgan D. Hodgson, Sara E. Hauptfuehrer, of counsel), for Defendant-Appellee Lockheed Martin Corp.
 
 
 5
 Before: KEARSE, WINTER, AND McLAUGHLIN, Circuit Judges.
 
 BACKGROUND
 McLAUGHLIN, Circuit Judge:
 
 6
 The demise of the Soviet Union in the early 1990's had a direct impact upon the defense industry in the United States. As the industry reshaped itself, the Martin Marietta Corporation (now Lockheed Martin or "Lockheed") acquired the General Electric Company's ("GE's") aerospace division in a bewilderingly complex transaction that closed in early April 1993 (the "deal"). In the deal, Lockheed agreed to hire all 37,000 GE aerospace employees, and to give them employee benefits that were "substantially similar to their GE benefits." To implement that promise, a portion of GE's pension assets was to be transferred (the "pension asset transfer") to Lockheed to fund the pension obligations Lockheed was to assume for those employees.
 
 
 7
 Shortly before closing, plaintiffs (who were then employees of GE and unhappy with the deal) instituted this action, seeking a preliminary injunction to prevent the pension asset transfer. The transfer, however, proceeded when the United States District Court for the District of Connecticut (Arterton, J.) refused to block it.
 
 
 8
 While moving for the injunction, the plaintiffs also requested relief that would preserve their "right" to remain participants in the GE pension plan (the "GE plan"), and alleged: (1) that GE and Lockheed had violated a fiduciary duty to give them full information about their pension benefit rights; (2) that GE's investment of pension funds in 90-day United States T-Bills was imprudent; and (3) violations of the Employee Retirement Income Security Act ("ERISA").
 
 
 9
 In September 1996 ("Flanigan I"), the district court dismissed the plaintiffs' claims that: (1) they had a "right" to remain in the GE plan; and (2) GE had violated ERISA. In ruling on both GE's and Lockheed's -- Lockheed had been named as a "knowing participant" in the alleged violations -- motions to dismiss, the court found that the plaintiffs had no unconditional right to remain participants in the GE plan after they were no longer GE employees. The court also held that neither the pension asset transfer itself nor the amount of the transfer violated ERISA. The district court, however, refused to dismiss plaintiffs' attack on GE's T-Bill investment (the "investment claim"), or their claim that defendants had failed to provide sufficient information concerning their pension rights (the "communications claim"). The district court then requested an amended complaint.
 
 
 10
 Plaintiffs complied with the court's request, and a month later, filed an amended complaint reasserting the investment claim and formally adding Lockheed as a defendant in the action. Plaintiffs also reasserted the communications claim, and added two new claims against Lockheed: (1) that at some unspecified time after closing, the new Lockheed pension plan (the "Lockheed plan") experienced a partial termination, thereby entitling plaintiffs to a vesting of accrued benefits and an allocation of surplus assets (the "partial termination claim"); and (2) that Lockheed had impermissibly reduced accrued benefits by permitting two special benefit features carried over from the GE plan - the Special Early Retirement Option ("SERO") and the Plant Closing Pension Option ("PCPO") - to expire.
 
 
 11
 After another round of motions in September 1997 ("Flanigan II"), the court rejected plaintiffs' claim that benefits had been impermissibly reduced when Lockheed eliminated the SERO and PCPO options. However, the court let stand the investment claim, the communications claim and the partial termination claim. A year later, the court conditionally certified two sub classes of plaintiffs to pursue these remaining claims.
 
 
 12
 Sub class One included all former GE employees who had retired or resigned from GE between the announcement of the deal and its closing. They challenged the nature and timing of the information provided by GE and Lockheed regarding the benefits that Lockheed was to offer transferring employees after the closing (the communications claim).
 
 
 13
 Sub class Two comprised former GE employees who had actually transferred and had gone to work at Lockheed. They challenged the procedure by which GE and Lockheed arranged the transfer of an initial $1 billion in pension assets from one plan to another (the investment claim). Sub class Two also made a claim against just Lockheed, alleging that the sequence of consolidation and downsizing moves after the sale constituted a partial plan termination under ERISA (the partial termination claim).
 
 
 14
 Following extensive discovery, defendants moved for summary judgment. It was granted by the district court. See Flanigan v. Gen. Elec. Co., 93 F. Supp. 2d 236 (D. Conn. 2000) ("Flanigan III"). In its decision, the court first addressed the investment claim, and concluded that no fiduciary breach had occurred as a result of the GE plan's $1 billion T-Bill investment. Specifically, it held that in the transaction both Lockheed and GE were acting as settlors, and not fiduciaries, and that even if GE could be considered a fiduciary, it had fulfilled its duties as such.
 
 
 15
 The district court next addressed the communications claim, and concluded that: (1) Lockheed had no fiduciary duties of communication to Sub-class One plaintiffs because ERISA does not cover prospective employees; (2) GE breached no disclosure duties because it did not know the final details of the new Lockheed plan; and (3) in any event, the plaintiffs had enough information to make informed decisions about their employment. Finally, the district court addressed the partial termination claim and found that plaintiffs had failed to exhaust their internal remedies.
 
 
 16
 Plaintiffs now appeal on a host of issues, claiming that the district court erred in both of its earlier dismissals (Flanigan I & II), as well as in granting summary judgment to defendants (Flanigan III). More particularly, plaintiffs claim that: (1) they had the right to stay in the GE plan rather than join the Lockheed plan; (2) the defendants violated ERISA's fiduciary duty rules, ERISA's rules prohibiting certain transactions, and its rules barring unlawful inurement when GE "converted" pension assets during the pension asset transfer; (3) they suffered from an illegal cutback of their SERO and PCPO benefits; (4) there are triable issues as to whether defendants failed to comply with their fiduciary duties to provide complete and accurate benefits information on a timely basis; (5) there are triable issues as to whether defendants violated their fiduciary duties by engaging in the T-Bill investment; and (6) there are triable issues as to whether a partial termination of the Lockheed plan occurred.
 
 
 17
 For the reasons set forth below, we affirm.
 
 DISCUSSION
 
 18
 This Court reviews a district court's grant of summary judgment de novo. See Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc., 145 F.3d 543, 547 (2d Cir. 1998).
 
 
 19
 Under Federal Rule of Civil Procedure 56(c), a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Silver v. City Univ., 947 F.2d 1021, 1022 (2d Cir. 1991). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 20
 I. There was no abdication of fiduciary duties
 
 
 21
 Plaintiffs contend that both GE and Lockheed were their fiduciaries under ERISA, and that both companies failed to live up to their fiduciary duties. Specifically, plaintiffs argue that GE and Lockheed: (1) failed to comply with their fiduciary duty to provide complete and accurate benefits information; (2) failed to comply with their fiduciary duty to invest plan assets productively and prudently when they engaged in the T-Bill investment; and (3) breached their fiduciary duty by engaging in a prohibited transaction that violated ERISA's unlawful inurement rules by wrongly "converting" pension assets during the pension asset transfer. We address each claim in turn.
 
 A. The communications claim
 1. GE
 
 22
 Plaintiffs maintain that the district court erred by rejecting their claim that GE breached its fiduciary duty by not disclosing quickly enough the exact employee benefits that plaintiffs would receive when they moved over to Lockheed. Specifically, they assert that GE's fuzzy representations that the Lockheed benefits would be "substantially similar" or "essentially equal" to the benefits they previously enjoyed at GE frightened them into retiring before the closing of the deal.
 
 
 23
 Communicating information about future plan benefits is indeed a fiduciary obligation. See Varity Corp. v. Howe, 516 U.S. 489, 498-99 (1996). Fiduciaries may be held liable for statements pertaining to future benefits if the fiduciary knows those statements are false or lack a reasonable basis in fact. See Ballone v. Eastman Kodak Co., 109 F.3d 117, 126 (2d Cir. 1997). This Court has also held fiduciaries liable for non-disclosure of information about a current plan when the omitted information was necessary to an employee's intelligent decision about retirement. See Becker v. Eastman Kodak Co., 120 F.3d 5 (2d Cir. 1997).
 
 
 24
 In this case, GE undertook a serious communications effort to disclose the post-closing benefits that Lockheed would provide once Lockheed decided what those benefits would be. In November 1992, GE and Lockheed distributed a letter to all of the employees, assuring them that they would receive "comprehensive information on [their] benefits, including the successor employer provisions of GE's plans and the terms for transition to [Lockheed's] generally comparable benefits package." In December 1992, GE and Lockheed began distributing to employees "Teaming Updates," which included information about the post-closing benefits. The first update stated,
 
 
 25
 We want to respond quickly to [employee] concerns, but more importantly, we want our responses to be correct. The fact is that it will take longer to answer some questions than others. For instance, some of the benefit questions raised are very complex. They need to be thoroughly researched and considered by both GE and [Lockheed] people working these issues. Many involve legal and tax ramifications which must be carefully deliberated. This will require diligent effort on our part, and patience on your part.
 
 
 26
 Similar communications continued through March. The March 10, 1993 "Teaming Update" informed employees that information about the Lockheed plan would be distributed by the week of March 22. On March 22, GE and Lockheed notified all employees that they had at least until April 2, 1993 to decide whether to retire or transfer to the Lockheed Plan. On March 23, 1993, employees received a Teaming Update detailing what the benefits would be, post-closing, were they to transfer to Lockheed.
 
 
 27
 These communications easily fulfilled any pertinent obligation on GE's part. While it is true that ERISA fiduciaries "may have duties to disclose information about plan prospects that they have no duty, or even power to change," Pegram v. Herdrich, 120 S. Ct. 2143, 2154 n.8 (2000) (citing Varity Corp., 516 U.S. at 505), "we do not require an ERISA fiduciary to be perfectly prescient as to all future changes in employee benefits. Nor do we require a fiduciary to disclose its internal deliberations...." Mullins v. Pfizer, Inc., 23 F.3d 663, 669 (2d Cir. 1994) (internal quotations and citations omitted). Thus, we have held that fiduciaries are "not required to voluntarily disclose changes in a benefit plan before they are adopted" because "[i]nsisting on voluntary disclosure during the formulation of a plan and prior to its adoption would, we think, increase the likelihood of confusion on the part of beneficiaries and, at the same time, unduly burden management, which would be faced with continuing uncertainty as to what to disclose and when to disclose it." Pocchia v. Nynex Corp., 81 F.3d 275, 278 (2d Cir. 1996). There is, therefore, no evidence that GE withheld material information concerning Lockheed benefits, or that GE purposefully misled the plaintiffs in any way (the two requirements for a fiduciary breach in this situation). See Becker, 120 F.3d at 8; Ballone, 109 F.3d at 122.
 
 
 28
 In any event, as of February 19, 1993, all GE employees knew that their pensions - the central element of their benefits - would be calculated at Lockheed by the identical formula previously used at GE. One month later, GE and Lockheed also announced that the majority of the remaining benefit programs would also remain identical. All this information was provided prior to the time that any final employment or retirement decisions had to be made by GE employees (April 2, 1993). We regard this as timely.
 
 2. Lockheed
 
 29
 a. Lockheed owed no fiduciary duty
 
 
 30
 To the extent that this claim is brought against Lockheed, it is invalid, because Lockheed was not a fiduciary when these communications occurred.
 
 
 31
 ERISA's fiduciary duties run to "participants" in employee benefit plans. See ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). ERISA defines "participant" as: "any employee or former employee of an employer... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." ERISA § 3(7), 29 U.S.C. § 1002(7). Participants are only those "'employees in, or reasonably expected to be in, currently covered employment...' or former employees who 'have... a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989) (internal citations omitted).
 
 
 32
 Although the class of plaintiffs who challenged the timeliness of Lockheed's communications never became Lockheed's employees, at the time of the pre-closing communications, they were potential employees. Thus, had there been a plan in effect, Lockheed might have had a duty to disclose the details of it to that class of employees. However, before the closing, there was not yet any "currently covered employment" of which to speak. Because we do not require fiduciaries to disclose plan details before they are adopted, Lockheed had no duty to disclose what were at best internal deliberations.
 
 
 33
 b. Lockheed was not a "knowing participant" in GE's breach
 
 
 34
 Lockheed cannot be found to be a "knowing participant" in GE's alleged breach of fiduciary duties, because, as explained above, GE committed no such breach.
 
 B. The T-Bill claim
 1. GE
 
 35
 The sub-class of plaintiffs who transferred to Lockheed contend that GE breached its fiduciary duty by investing $1 billion in pension assets earmarked for transfer to the Lockheed plan in low interest 90-day U.S. Treasury Bills. They complain that in doing so, GE disregarded the plaintiffs' interests in order to advance GE's goal of closing the deal with Lockheed quickly. However, this sub-class of plaintiffs has no standing to pursue this claim. Since GE was required to transfer a fixed amount - $1 billion plus T-bill interest - to Lockheed immediately after the closing, any harm from investing that amount in T-bills inured to GE, not Lockheed. Had GE instead invested the $1 billion in equities, it still would have had to transfer to Lockheed only the value of $1 billion plus the interest earned over the period, had it been invested in T-bills. GE would have been able to keep any additional earnings and, likewise, would have bore the loss had the equity investment produced less than would have a T-bill investment. Thus, GE's investment decision had no effect on what Lockheed ultimately received.
 
 
 36
 a. GE acted prudently
 
 
 37
 Moreover, even if this sub-class had standing, GE acted prudently. In supervising pension assets, plan trustees have fiduciary obligations that have been described as "the highest known to the law." Donovan v. Bierwirth, 680 F.2d 263, 272 n.8 (2d Cir. 1982). The obligations include the following:
 
 
 38
 [ERISA] Sections 404(a)(1)(A) and (B) impose three different although overlapping standards. A fiduciary must discharge his duties "solely in the interests of the [plan] participants and beneficiaries." He must do this "for the exclusive purpose" of providing benefits to them. And he must comply "with the care, skill, prudence, and diligence under the circumstances then prevailing" of the traditional "prudent man."
 
 
 39
 Id. at 271 (quoting ERISA §§404(a)(1)(A) & (B), 29 U.S.C. §§ 1104(a)(1)(A) & (B)). In making investment decisions, plan trustees must conduct a "careful and impartial investigation," with "an eye...to the interests of the participants and beneficiaries." Id.
 
 
 40
 As noted above, in making investment decisions, GE had to conduct a "careful and impartial investigation," with "an eye...to the interests of the [plan] participants and beneficiaries." Bierwirth, 680 F.2d at 271. When deciding if a plan trustee has met its fiduciary obligations, this Court must "inquire 'whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment.'" Katsaros v. Cody, 744 F.2d 270, 279 (2d Cir. 1984) (quoting Donovan v. Mazzola, 716 F.2d 1226, 1232 (9th Cir. 1983)). Typically, a "prudent person" test is used. Katsaros, 744 F.2d at 279.
 
 
 41
 In this case, the undisputed facts demonstrate that GE employed appropriate methods to investigate and determine the wisdom of the 90-day T-Bill investment. Specifically, the GE plan trustees testified that, given the short-term liquidity needed to transfer $1 billion plus interest in approximately 90 days, it was prudent to invest the $1 billion in solid short-term assets. This course eliminated the risk that the GE plan trustees would, in the event of a market downturn, have to liquidate substantial additional plan assets to satisfy the contractual, $1 billion cash requirement to Lockheed.[1] In reaching this decision, it cannot be said that GE or its plan trustees acted irrationally or imprudently. See 29 U.S.C. §1104(a)(1)(B); Katsaros, 744 F.2d at 279.
 
 2. Lockheed
 
 42
 a. Lockheed was not a fiduciary
 
 
 43
 Under ERISA, a person or corporation is a plan fiduciary "to the extent [] he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets..., or [] he has any discretionary authority or responsibility in the administration of such plan." 29 U.S.C. §1002(21)(A). "Under this definition, a person... has [fiduciary] status only 'to the extent' that he has or exercises the described authority or responsibility." F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1259 (2d Cir. 1987).
 
 
 44
 Lockheed clearly was not a fiduciary of the GE plan because it had no authority or responsibility over it. Lockheed had no control over: (1) GE's decision to enter into the deal; or (2) the GE plan's trustees' decision to go forward with the T-Bill investment. Plaintiffs assert that Lockheed acquired fiduciary status as to the T-Bill investment when it negotiated and entered into the deal. However, an unrelated third-party like Lockheed does not acquire fiduciary obligations simply by negotiating the terms of a deal. See id.
 
 
 45
 Nor did the Transaction Agreement impose fiduciary responsibility upon Lockheed under these circumstances. The record shows that GE wanted to give Lockheed more control over the investment decision, but that Lockheed refused and demanded the $1 billion plus T-bill interest at closing, risk-free. The Transaction Agreement expressly stated that, if GE invested the money at the T-bill rate, Lockheed would not assume any fiduciary responsibility with respect to the assets pre-closing. Moreover, the Transaction Agreement provided for an alternative investment approach whereby GE and Lockheed could agree to invest the assets in a different manner. Were this alternative chosen, the Transaction Agreement then required Lockheed to assume co-fiduciary status with respect to the assets. The parties selected to pursue the T-bill strategy, thereby absolving Lockheed of responsibility under the terms of the Transaction Agreement.
 
 
 46
 b. Lockheed was not a "knowing participant" in GE's breach
 
 
 47
 Lockheed cannot be found to be a "knowing participant" in GE's alleged breach of fiduciary duties, because again, as explained above, GE committed no such breach.
 
 C. The unlawful inurement claim
 1. GE
 
 48
 The plaintiffs assert that the district court erred when it rejected their claims challenging a supposedly ancillary benefit derived by GE from the transfer of pension assets to the Lockheed plan. The GE plan was a defined benefit plan that contained a significant actuarial surplus at the time of the transfer: the plan's assets were greater than its liabilities. During the transfer, some of this surplus went over to the Lockheed plan. The plaintiffs therefore contend that, because of this surplus, GE received: (1) a higher sale price for the aerospace business; or (2) an advantage in dealing with government contract claims, and that these possible benefits violated GE's fiduciary duties. See 29 U.S.C. § 1103(c)(1).
 
 
 49
 Fiduciary duty and prohibited transaction rules apply only to decisions by an employer acting in its fiduciary capacity. See 29 U.S.C. §§ 1104(a), 1106(a)(b). Although it is an issue of first impression in this Circuit whether an allocation of pension plan assets and liabilities resulting from the spin-off of a division triggers fiduciary duties under ERISA, recent Supreme Court case law and that of at least four circuit courts of appeals indicate that it is not. See Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 443-44 (1999) (holding that "an employer's decision to amend a pension plan concerns the composition or design of the plan itself and does not implicate the employer's fiduciary duties"); Lockheed Corp. v. Spink, 517 U.S. 882 (1996) (holding that an employer does not act as a fiduciary when it establishes, modifies or terminates an ERISA-covered pension plan); Hunter v. Caliber Sys., Inc., 220 F.3d 702, 719 (6th Cir. 2000) (holding that the transfer of assets from one plan to another was not a decision subject to ERISA's fiduciary obligations); Ames v. Am. Nat'l Can Co., 170 F.3d 751, 757 (7th Cir. 1999) (holding employer's decision regarding how to structure plan was not a fiduciary decision); Sys. Council EM-3 v. AT&T Corp., 159 F.3d 1376, 1379-80 (D.C. Cir. 1998) (holding employer's allocation of a restructured plan's excess was not a fiduciary decision); Blaw Knox Retirement Income Plan v. White Consol. Indus., Inc., 998 F.2d 1185, 1189 (3d Cir. 1993) (holding decision to sell off a division and transfer plan assets was not a fiduciary decision). Because GE's decision to spin-off the division along with its pension plan was, at its core, a corporate business decision, and not one of a plan administrator, GE was acting as a settlor, not a fiduciary, when it transferred the surplus to Lockheed. Therefore, GE's general fiduciary duties under ERISA were not triggered.
 
 
 50
 Nor did the transaction result in an unlawful inurement to GE. See 29 U.S.C. §1103(c)(1) (providing that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan"). Although GE might have received some benefit, such as a higher sale price, because it was able to transfer some of the surplus to Martin, Section 1103 "focuses exclusively on whether fund assets were used to pay pension benefits to plan participants." Hughes Aircraft, 525 U.S. at 442. In this case, all of the pension surplus that GE transferred to Lockheed was used to fund pension benefits. Any benefit received by GE was, at most, indirect. Cf. Morse v. Stanley, 732 F.2d 1139, 1146 (2d Cir. 1984) ("It is no violation of a trustee's fiduciary duties to take a course of action which reasonably best promotes the interest of plan participants simply because it incidentally also benefits the corporation."; Trenton v. Scott Paper Co., 832 F.2d 806, 809 (3d Cir. 1995) (holding, in Section 1104 context, employer did not inappropriately benefit when it used surplus from one benefit plan to fund another, thereby making second plan more efficient and, therefore, not exclusively inuring to benefit of first plan members); Donovan v. Walton, 609 F. Supp. 1221, 1245 (S.D. Fla. 1985) (holding ERISA "simply does not prohibit a party other than a plan's participants and beneficiaries from benefitting in some measure from a prudent transaction with the plan"), aff'd sub nom. Brock v. Walton, 794 F.2d 586 (11th Cir. 1986).
 
 
 51
 It is also important to note that GE fully funded all accrued benefits in its transfer to the Lockheed plan. Although the fact that this was a settlor transaction means that ERISA's general fiduciary provisions were not triggered, ERISA provides mandatory special rules for the transfer of plan assets. ERISA Section 208 provides:
 
 
 52
 A pension plan may not merge or consolidate with, or transfer its assets or liabilities to, any other plan...unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately prior to the merger, consolidation, or transfer (if the plan had then terminated).
 
 
 53
 29 U.S.C. § 1058. Therefore, because this was a defined benefit plan (a plan in which certain, discrete benefits are guaranteed), plaintiffs ended up receiving everything to which they were entitled. See 29 U.S.C. § 1058; Brillinger v. Gen. Elec. Co., 130 F.3d 61, 63-64 (2d Cir. 1997) (holding that, under ERISA Section 208, participants were not entitled to have benefits increased after merger, despite existence of pension-asset surplus, because fact plan was a defined-benefit plan meant Section 208 was satisfied as long as benefits not reduced).
 
 
 54
 2. Lockheed was not a "knowing participant" in GE's breach
 
 
 55
 Lockheed cannot be found to be a "knowing participant" in GE's alleged breach of fiduciary duties, because once again, as explained above, GE committed no breach.
 
 CONCLUSION
 
 56
 We agree with the manner in which all other issues raised by appellants have been addressed in the thorough opinions of the district court.
 
 
 57
 We have also considered all the appellants' remaining contentions and find them to be without merit.
 
 
 58
 Accordingly, we AFFIRM the grant of appellees' motions for dismissal.
 
 
 
 NOTE:
 
 
 [1]
 The transaction agreement, dated November 22, 1992, among GE and Lockheed (the "Transaction Agreement"), paragraph V.06(c), requires a transfer at closing of $1 billion plus an amount equal to the "earnings or losses attributable to the investment of such assets in the manner provided in paragraph (a)." Paragraph (a), in turn, states that the $1 billion will be invested in T-Bills "or as mutually agreed" upon by GE and Lockheed.