Emily DEROGATIS Plaintiff,

v.

BOARD OF TRUSTEES OF THE CENTRAL PENSION FUND OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS and Participating Employers, Plan Administrator; James T. Callahan, Trustee; Michael R. Murphy, Trustee; Terrence E. McGowan, Trustee; Brian E. Hickey, Trustee; John Duffy, Trustee; Robert P. McCormick, Trustee; Noel C. Borck, Trustee; Paul O. Gehl, Trustee; J. Patrick Tielborg, Trustee; Paul C. Bensi, Trustee; Defendants.

Emily DeRogatis, Plaintiff,

v.

Board of Trustees of the Welfare Fund of the International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL–CIO; James T. Callahan, Trustee; Francis DiMenna, Trustee; John Brunetti, Trustee; Defendants.

Nos. 14 Civ. 8788 (CM),
14 Civ. 8863 (CM)

United States District Court,
S.D. New York.

Signed March 2, 2016

Edgar Pauk, Law Office of Edgar Pauk, Brooklyn, NY, Robert Lawrence Liebross, Law Office of Robert L. Liebross, New York, NY, for Plaintiff.

Lisa Marie Gomez, Michael Seth Adler, Cohen, Weiss and Simon LLP, New York, NY, for Defendants.

## AMENDED MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McMahon, United States District Judge

This is a very sad case.

Plaintiff's husband, formerly a member of the International Union of Operating Engineers Local 15 ("Local 15"), died of lung cancer in September 2011. It was his wish and intent that his wife receive a 100% survivor's benefit upon his demise. Mr. DeRogatis's pension Plan of Benefits expressly provides that only a 50% benefit will be paid out to a surviving spouse if a Local 15 member dies while still employed, and Plaintiff and her husband were specifically told, six months before he died, that he would have to retire before he died for her to get a full pension benefit. So when her husband took a turn for the worse,

Plaintiff went to the office of the Welfare Fund of the International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL–CIO (the "Local 15 Welfare Fund"), which provided her husband with medical benefits, with retirement papers, intending to file them on her husband's behalf.

She did not do so.

Plaintiff maintains (and for the purposes of this motion I will take as true) that she received bad, or at least incomplete, information from an employee of the Local 15 Welfare Fund about the possibility that she and her husband would lose their health insurance if he retired. Based on this advice—which was not about her pension benefit, but about a different benefit—she did not file the retirement papers. As a result, her husband was still a union employee when he died just two months later. Plaintiff is now being paid a 50% survivor's benefit, per the terms of the Plan.

Plaintiff commenced two separate actions—one against the Board of Trustees of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers (the "CPF") and nine individual trustees (collectively the "CPF Defendants"), and one against the Local 15 Welfare Fund and three individual trustees (collectively the "Local 15 Welfare Fund Defendants")—seeking to recover from someone the difference between the 50% benefit she is receiving and the 100% benefit that she and her husband always intended that she would receive.

On this motion, Local 15 seeks summary judgment dismissing the claims against it. Despite the court's deep sympathy for Plaintiff, that motion must be granted.

## BACKGROUND

The Court has previously ruled on a motion for summary judgment made by

the CPF Defendants. (Dkt. No. 20 (the "CPF Order")).) The background facts are discussed extensively in that opinion and familiarity with them is presumed. I will limit my discussion to the facts needed to dispose of the Local 15 Welfare Fund Defendants' motion.

Plaintiff Emily DeRogatis is the surviving spouse of Frank DeRogatis. (Statement of Undisputed Material Facts Submitted by the Local 15 Welfare Fund Defs. Pursuant to R. 56.1 ISO Their Summ. J. Mot. ("Defs.' Rule 56.1 Statement") ¶ 1.) Members of Local 15, like Mr. DeRogatis, receive health benefits from the Local 15 Welfare Fund and a pension, upon retirement, from the CPF, a multiemployer "employee benefit plan" under ERISA whose Board of Trustees sits in Washington, D.C. (Id. ¶¶ 4–11.) Though the Local 15 Welfare Fund does not administer Local 15 members' pensions, its employees regularly meet with Local 15 members at the Local 15 Welfare Fund office to discuss their welfare and pension benefits.

In March of 2011, after Mr. DeRogatis had been diagnosed with what proved to be terminal cancer, Plaintiff and her husband met with Patrick Keenan, a Local 15 Welfare Fund employee, to discuss the welfare and pension benefit options that would be available to Plaintiff after Mr. DeRogatis passed away. (Id. ¶ 17.) In a letter to Plaintiff and her husband dated March 17, 2011, Keenan summarized the substance of the meeting. He drew their attention to sections of the Summary Plan Description ("SPD"), and set forth Mr. DeRogatis's available options. (Id. ¶ 21; Decl. of James M. Steinberg ISO Mot. for Summ. J. ("Steinberg Decl.") Exh. F.) None of the options discussed that were in the SPD or in Keenan's letter permitted Plaintiff to receive an amount equivalent to a 100% monthly benefit if Mr. DeRogatis passed away before retiring. However, a 100% monthly benefit was available to Plaintiff if her husband elected to retire before he died. (Id.)

In late July or early August of 2011, Mr. DeRogatis was hospitalized with pneumonia. (Defs.' Rule 56.1 Statement ¶ 26.) At that time, Plaintiff went to the Local 15 Welfare Fund office with a signed copy of her husband's CPF pension application, in which Mr. DeRogatis elected to retire and selected a 100% survivor's benefits option. (Id. ¶ 27.) It was her intention to file his election to retire.

While at the Local 15 Welfare Fund office, Plaintiff met (in a foyer) with a Local 15 Welfare Fund employee named Richard Lopez. (Id. ¶¶ 30, 38.) Lopez was a claims processor specialist; his job responsibilities included processing medical, dental, and optical claims and speaking with plan participants about health coverage upon retirement (not death benefits). (Id. ¶¶ 31–33.) Lopez reported to Keenan, who was the office's day-to-day operator. (Id. ¶ 19.)

Exactly what was said during the brief (15 minute) conversation between Plaintiff and Mr. Lopez is in dispute. Taking Plaintiff's version as true for purposes of the motion, Plaintiff told Mr. Lopez that she wanted to get her husband's retirement and pension paperwork in order, because her husband was in the hospital with pneumonia. (Id. ¶ 40.) According to Plaintiff Lopez advised her not to file the pension papers at that time. He explained that if Mr. DeRogatis retired prior to the age 62, they DeRogatises would lose their health insurance unless Mr. DeRogatis had received a Social Security Disability award. (Pl.'s Response to Defs.' Statement of Undisputed Material Facts Pursuant to Local. R. 56.1, and Statement of Additional Material Facts ("Pl.'s Rule 56.1 Statement") ¶ 39.) This is, apparently, true; however, Lopez did not tell Plaintiff about alternative services or health insur-

ance that would be available to a newly retired employee, such as COBRA coverage (which by law is available for 18 months, as long as the retired employee pays the necessary premiums) or even Medicaid (for which application would need to be made).

Plaintiff testified that she did not submit the application at that time because of her conversation with Lopez. (*Id.*) Instead, she helped her husband apply for a short term disability benefit from the Local 15 Welfare Fund. (Defs.' Rule 56.1 Statement ¶ 43.)

Mr. DeRogatis died on September 13, 2011. When he died, his retirement application had not yet been filed. (Defs.' Rule 56.1 Statement ¶ 48.)

Plaintiff filed the retirement application together with an application for survivor's benefits soon after her husband passed away. However, the CPF processed the benefits application as a claim for a 50% Qualified Pre–Retirement Survivor Annuity, which. is standard practice under the Plan of Benefits when an employee dies before retiring. (CPF Order at 6.)

On May 7, 2012, the Plaintiff sent a letter to the CEO of the CPF, asking that the CPF issue her 100% survivor's benefit as her husband had selected on his retirement application. (*Id.* at 8.) In her letter, she blamed her failure to timely file her husband's retirement paperwork on the poor counsel she received from Mr. Lopez. (*Id.*) Plaintiff attached a letter she had previously sent to the president of the local union, wherein she questioned, with much exasperation, why Mr. Lopez had not told her that other health insurance options were available if Mr. DeRogatis did in fact retire (such as Medicare or COBRA insurance). (*Id.*)

On July 27, 2012, the CPF denied her request for 100% survivor's benefits. The CPF stated that it was obligated to interpret the Plan as written, and concluded that Plaintiff was receiving the benefit to which she was entitled. (*Id.*)

On September 20, 2012, Plaintiff sent a letter appealing the CPF's decision denying her request for 100% survivor's benefits. (*Id.*) The Plaintiff acknowledged that the CPF. processed the benefit application according to the terms of the Plan of Benefits, but again blamed her failure to file the application in a timely fashion on the advice given to her by Mr. Lopez. (*Id.*) Because Mr. Lopez had not provided her with complete and accurate information regarding all health insurance options, or told her about the consequences of delaying retirement paperwork (though that had already been communicated to her by Mr. Keenan), she asked that the CPF correct for this "unfortunate oversight." (*Id.*)

Plaintiffs appeal was denied on October 31, 2012. (*Id.* at 9.)

### Procedural History

On December 11, 2013, Plaintiff filed a complaint against the CPF Defendants seeking a declaration that the CPF Board of Trustees had breached its duties and obligations under ERISA and that Plaintiff was entitled to receive a 100% survivor's benefit. Plaintiff also sought back payments and attorney fees.

Plaintiff filed this companion lawsuit against the Local 15 Welfare Fund Defendants on November 6, 2014. (Dkt. No. 2.) Plaintiff seeks a similar remedy against them: declaratory' judgment that the Local 15 Welfare Fund Defendants breached their duties and obligations under ERISA, and the difference between the 50% survivor's pension benefits she currently receives and the 100% survivor's benefits she believes she is due. Specifically, Plaintiff asserts claims for: (1) breach of fiduciary duty under 29 U.S.C. § 1104(a), as enforced by 29 U.S.C. § 1132(a)(3)(B); and (2) other appropriate equitable relief under 29 U.S.C. § 1132(a)(3)(B).

By the time Plaintiff filed her complaint against the Local 15 Welfare Fund Defendants, discovery had been completed in the case against the CPF Defendants. On November 25, 2014, the CPF Defendants filed a motion for summary judgment. (*See* Dkt. No. 20.)

Before deciding the motion, the Court consolidated the two cases on March 3, 2015. (Dkt. No. 19). On April 2, 2015, the Court then granted in part and denied in part the motion for summary judgment filed by the CPF Defendants. (Dkt. No. 20.)

Currently before the Court is the Local 15 Welfare Fund's motion for summary judgment dismissing the Plaintiff's complaint. The Local 15 Welfare Fund Defendants assert that they are entitled to summary judgment because Lopez was not a fiduciary under ERISA; they claim Lopez did not exercise authority or control over the Local 15 Welfare Fund and did not make any statement that would give rise to a fiduciary duty. The Local 15 Welfare Fund Defendants also assert that Plaintiff is not entitled to equitable relief and that her second cause of action for "appropriate equitable relief" is duplicative of her first cause of action.

## DISCUSSION

### I. Standard

A motion for summary judgment shall be granted if the moving party can show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the evidence], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must then go beyond the pleadings and "designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (citations omitted).

The court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion. *Gibson v. Am. Broadcasting Cos., Inc.,* 892 F.2d 1128, 1132 (2d Cir.1989). There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### II. Defendants Are Entitled to Summary Judgment on Plaintiffs Breach of Fiduciary Duty Claim

#### A. Definition of a Fiduciary Under 29 U.S.C. § 1104(a)

ERISA retirement plan administrators have a fiduciary duty to act "solely in the interest of the participants and beneficiaries ... for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1). Fiduciaries must discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use...." *Id.*

When a plan administrator breaches his or her fiduciary duty, section 502(a)(3) of ERISA authorizes a participant, beneficiary, or fiduciary of a covered plan to "enjoin any act or practice which violates ... the terms of the plan" or "to obtain other appropriate equitable relief" to "redress such violations." 29 U.S.C. § 1132(a)(3).

Courts have interpreted this provision as creating "a cause of action for claims that a fiduciary has violated ERISA by providing false or misleading information regarding benefits...." *S.M. v. Oxford Health Plans (N.Y.), Inc.,* 94 F.Supp.3d 481, 511 (S.D.N.Y.2015).

■ In such actions, the threshold question is "not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest," but rather "whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Bell v. Pfizer, Inc.,* 626 F.3d 66, 73 (2d Cir.2010) (quoting *Pegram v. Herdrich,* 530 U.S. 211, 226, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)).

ERISA defines persons acting as a fiduciary as follows:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

■ The first and third subsections of Section 1002(21)(A) thus provide two ways of identifying whether an employee is a fiduciary and subject to fiduciary duties: he or she either "exercises any discretionary authority or discretionary control respecting management" of the plan under the first subsection, or "has any discretionary authority or discretionary responsibili-

ty in the administration" of the plan under the third subsection. 29 U.S.C. § 1002(21)(A); *Varity Corp. v. Howe,* 516 U.S. 489, 498, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). In other words, an employee of the plan administrator "has fiduciary status only to the extent that he *has* or *exercises* the described authority or responsibility." *Bell,* 626 F.3d at 74 (quoting *Flanigan v. Gen. Elec. Co.,* 242 F.3d 78, 87 (2d Cir.2001)) (emphasis added).

ERISA does not define discretionary authority, but the Department of Labor has provided guidance by explaining that employees of a plan administrator who "have no power to make any decisions as to plan policy, interpretations, practices or procedures" are not considered fiduciaries under ERISA because they do not exercise discretionary authority. 29 C.F.R. § 2509.75–8. Thus, "plan employees who perform ministerial tasks with respect to the plan, such as the application of rules determining eligibility for participation, preparation of plan communication materials, the calculation of benefits, and the maintenance of employee records" "fall outside the definition of fiduciary." *Id.;* *Bell,* 626 F.3d at 74.

*Tocker v. Kraft Foods N. Am., Inc. Ret. Plan,* 494 Fed.Appx. 129 (2d Cir.2012), an unpublished decision, is the Second Circuit's most on-point application of ERISA's definition of a fiduciary to plan employees. There, the Second Circuit considered whether the Benefits Administration Manager in the defendant's human resources department was acting as a fiduciary when he researched and communicated to an employee the benefits the employee would receive pursuant to the company's retirement plan if the employee participated in a voluntary workforce reduction program. The Benefits Administration Manager was a mid-level manager who reported to the Director of Benefits,

580

who in turn reported to the Vice President of Human Resources, and he led a staff of case administrators who "(1) calculated pension benefits, (2) answered employee [benefit] questions ..., (3) ensured that employees received benefit information and enrollment materials, and (4) received employee benefit elections and recorded them." *Id.* at 131.

Citing the guidance issued by the Department of Labor, 29 C.F.R. § 2509.75–8, the Second Circuit held that the Benefit Administration Manager's responsibilities did not make him a fiduciary, because he was responsible for "exactly the sort of ministerial tasks which ERISA and its implementing regulations expressly state do *not* give rise to fiduciary liability." *Tocker*, 494 Fed.Appx. at 131 (emphasis in original). The Second Circuit also held that apart from his official duties, the employee was not acting as a fiduciary when determining what benefits the plaintiff would receive and communicating them to the plaintiff, since applying "rules determining eligibility for participation of benefits" was a ministerial function. *Id.*

Though the Second Circuit acknowledged that "there is precedent indicating that a fiduciary's responsibilities may include communicating plan information to participants," it concluded that "no case law, statutory text, or regulation suggests that one acquires fiduciary status merely by communicating such information." *Id.* 131–32.

It then affirmed the district court's decision to grant summary judgment in the defendant's favor on the grounds that the employee was not a fiduciary.

### B. Lopez Was Not a Fiduciary

In their motion for summary judgment, the Local 15 Welfare Fund Defendants argue that Lopez was not a fiduciary' under ERISA because he neither had nor exercised the authority and responsibility necessary to make him a fiduciary. He did not *have* discretionary authority or responsibility, because his job responsibilities were to process claims and answer participants' questions using the Local 15 Welfare Fund guidelines, and he did not *exercise* discretionary authority or responsibility during his conversation with Plaintiff, because he only communicated information to Plaintiff that was also found in the Local 15 Welfare Fund's SPD. (Mem. Of Law ISO the Local 15 Welfare Fund Defs.' Mot. for Summ. J ("Defs.' Br.") at 6–10.)

In response, Plaintiff argues that Lopez was delegated authority to resolve issues regarding individuals' coverage, which required discretionary authority and responsibility under ERISA, and Lopez exercised such discretion when advising Plaintiff on her husband's coverage. (Pl.'s Mem. Of Law In Opp'n to the Defs.' Mot. for Summ. J. ("Pl.'s Br.") at 16–23.)

The law is on Defendants' side. Under *Tocker*, Lopez is not considered a fiduciary. When Lopez met with DeRogatis in 2011, he was employed as a claims specialist by the Local 15 Welfare Fund. (Defs.' 56.1 Statement ¶ 31.) As a claims processor specialist, his responsibilities including processing healthcare claims as well as speaking with plan participants about coverage. (*Id.* ¶¶ 32–33.) Specifically, he answered questions about the Fund guidelines relating to how participants could maintain health coverage upon retirement, often by discussing what was written in the Fund's SPD. (*Id.* ¶ 33.)

These responsibilities are nearly identical to those of the Benefit Administration Manager in *Tocker*, who, according to the Second Circuit, was not a fiduciary. There, as here, the employee's primary responsibilities were to calculate benefits and answer questions - 'exactly the sort of ministerial tasks which ERISA and its implementing regulations expressly state

do *not* give rise to fiduciary liability.' *See Tocker*, 494 Fed.Appx. at 131. Handling the questions Lopez was authorized to answer for plan participants - such as 'when do I have coverage through?' or 'why am I paying this?' (Pl.' s 56.1 Statement ¶ 12) - would appear to fall squarely within the employee's responsibilities in *Tocker*, since he was responsible for overseeing the 'answer[ing] of employees' [benefit] questions' and 'ensur[ing] that employees receive benefit information.' *Id.* As with the employee in *Tocker*, the responsibility for answering such questions would not make Lopez a fiduciary.

*Tocker* also suggests that, apart from Lopez's official responsibilities, he was not exercising the sort of discretion that would make him a fiduciary under the first subsection of Section 1002(21 )(A) when speaking with DeRogatis. In *Tocker*, the Second Circuit was clear that applying 'rules determining eligibility for participation of benefits' and answering participants' questions was exercising a ministerial function.

Decisions within this circuit issued after *Tocker* make clear that actions like Lopez's do not involve the sort of discretionary authority and responsibility that make employees fiduciaries. *Gill v. Bausch & Lomb Supplemental Ret. Income Plan I*, 1 F. Supp. 3d 72, 84 (W.D.N.Y.2014) aff'd, 594 Fed.Appx. 696 (2d Cir.2014) is illustrative. There, the court held that two members of a human resources department - the Vice President of Compensation and Benefits and the Senior Benefits Analyst— acted as fiduciaries when reviewing the terms of a benefits plan to determine what actions (such as a shareholder vote or a lump sum payment to inactive participants) the plan administrator would be required to take upon a change in control, soliciting and then rejecting the opinions of outside consultants, communicating with employees' financial advisers, and directing the plan trustee to cease monthly payments to plaintiffs and to make a lump sum payment instead. The court reasoned that the personnel had "exhaustively discussed and debated the proper *interpretation* of [the plan], both in-house and with outside benefits specialists, actuaries, and attorneys," and based on their interpretation of the plan's terms, determined "the rights and benefits" owed to plaintiffs by "terminating [their] monthly benefits under the plan and causing lump sum payment to be made to them" instead. *Id.* at 85 (emphasis in original). The court held as a matter of common sense that the personnel performed discretionary duties, concluding that "common sense often makes good law." *Id.* The question of the employees' fiduciary status in *Gill* was not appealed to the Second Circuit.

The employees in *Gill* were responsible for far more than what the Second Circuit considered to be ministerial tasks in *Tocker*. They made policy determinations that affected the entire plan and the benefits received by a large number of participants. In making these policy determinations, the employees interpreted the terms of the plan itself, eventually coming to a conclusion about what the terms required of the plan administrator.

By way of comparison, Lopez merely interpreted a fee schedule, the Local 15 Welfare Fund's guidelines, and the SPD when calculating benefits for individual participants, like Plaintiff, and answering their questions about coverage. These documents were given to Lopez and his colleagues to standardize benefit awards and to constrain their discretion by limiting their answers to information that participants themselves possessed but, perhaps, could not understand. In short, the employees in *Gill* exercised an entirely different degree of discretion than Lopez exercised in meeting with Plaintiff.

Plaintiff cites several district court cases decided before *Tocker* that hold that communicating with plan participants and beneficiaries can be sufficient to make an employee a fiduciary. However, these are not controlling; the Second Circuit acknowledged the existence of such cases in *Tocker* but expressly rejected "precedent indicating that a fiduciary's responsibilities may include communicating plan information to participants." *See Tocker*, 494 Fed. Appx. at 131–32. Moreover, in a footnote, the Second Circuit distinguished two of the very cases cited by Plaintiff: *Flanigan v. General Electric Co.*, 242 F.3d 78 (2d Cir. 2001) and *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir.1998). According to the court, *Flanigan* does not address whether a defendant was a fiduciary, but rather whether "[c]ommunicating information about future plan benefits is an obligation of parties who are fiduciaries." *Id.* at 131 n. 2 (internal quotations omitted). *Sprague* only "noted that an employer '*may* have acted in a fiduciary capacity when it explained its retirement program to early retirees' before concluding that the employer did not breach any applicable fiduciary duty." *Id.* (emphasis added). It was also, of course, an out-of-circuit opinion.

Plaintiff also relies heavily on *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55 (2d Cir.2006), which considered whether a union, which was listed as a plan administrator in a SPD given to employees, acted in a fiduciary capacity when explaining plan benefits to employees. The court held that as a listed plan administrator, the union should be considered a fiduciary under subsection three of 29 U.S.C. § 1002(21)(A), "even if, as the district court found, there is no evidence that Local 100 actually exercised this authority in a manner that would qualify under subsection one." *Id.* at 64. The court did not determine whether an employee of the plan administrator that allegedly breached his or her fiduciary duty to plan participants was liable under either subsection 29 U.S.C. § 1002(21)(A), so it does not directly answer whether Lopez as an employee of a named plan administrator and not the named administrator itself is a fiduciary.

In sum, the most recent Second Circuit case law makes clear that employees like Lopez who merely calculate benefits and answer plan participants' questions are not acting as fiduciaries under ERISA. Accordingly, a jury cannot determine that Lopez violated a fiduciary duty to Plaintiff, even assuming (as I do) that he provided Plaintiff with inaccurate and misleading information about her husband's benefits. Plaintiff s ERISA claims against the Local 15 Welfare Fund must be dismissed.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment as to the Local 15 Welfare Fund Defendants is granted. Plaintiff's claims against them are dismissed.

The Clerk of the Court is instructed to remove the motion at Docket # 27 from the Court's list of active motions.